IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. CHRISTOPHER MICHAEL EMTER, Defendant. | CR 14-89-BLG-SPW<br><br>OPINION AND ORDER |

Defendant Christopher Michael Emter ("Emter") is charged with Felon in Possession of a Firearm and Possession of a Stolen Firearm. (Doc. 1). He has moved to suppress evidence found during the search of his residence on February 14, 2013. (Doc. 30). He has also moved to dismiss under the Speedy Trial Act for the second time. (Docs. 15, 30).

On January 16, 2014, the Court held an evidentiary hearing. The Court heard testimony from former Stillwater County Sheriff's Office Undersheriff Woody Claunch, Sergeant Charles Kem, Deputy Moses Richardson, Deputy Randy Smith, Montana Department of Corrections Probation and Parole Officer Katie Weston, Federal Task Force Officer Steve Feurstein, and former Stillwater County Chief Deputy County Attorney Nancy Rohde. Having read and reviewed the parties' submissions and having heard the testimony of the witnesses noted above, the Court DENIES Emter's motion.

1

I.  **Background**

On the evening of February 8, 2013, Stillwater County Sheriff's Deputy Randy Smith went to the Rocking J gas station south of Absarokee, Montana, to follow up on complaints of theft and criminal mischief. Stillwater mine employees used the Rocking J parking lot to park their vehicles so they could ride the bus to the mine site. Several people complained that someone had broken into their vehicles and stolen their things. Deputy Smith determined that ski gear, a battery jump pack, binoculars, an iPod, music CDs, a wallet and check book, IDs, and transmission fluid had been stolen. Follow up investigation revealed that someone driving a Ford Explorer had tried to use the stolen credit cards to buy gas at Beartooth Corner Convenience Store the same night of the break-ins.

The next day, an Absarokee resident who was concerned about the recent criminal activity called the Stillwater County Sheriff's Office. She reported to Stillwater County Sheriff Cliff Brophy that she had seen two males unloading items from a red SUV into the garage of someone named "Misty," the night of the break-ins. She also reported that two SUVs, a red one and a beige one, and a small pickup, had been at "Misty's" house lately. Sheriff Brophy shared this information with Deputy Smith, Sgt. Charles Kem, and Undersheriff Woody Claunch. Two days later, Stillwater County law enforcement located a red Ford Explorer in

2

Absarokee that matched the description of the one captured in Beartooth Corner's video surveillance. It was registered to "Misty."

Sgt. Kem looked up "Misty" online and discovered through her Facebook account that she was romantically linked to Emter. Sgt. Kem also checked Emter's criminal history and determined that Emter was on probation and parole with the State of Montana. Sgt. Kem contacted Emter's Montana Department of Corrections Probation and Parole officer, Katie Weston, who told him that Emter was moving to Absarokee to live with his girlfriend, first name "Misty." Sgt. Kem also spoke with Emter's employer at the time who confirmed that Emter's girlfriend lived in Absarokee.

Based on the above information, Undersheriff Claunch prepared a search warrant application. On February 14, 2013, the warrant was issued and specified that "evidence of the crimes of Theft, Criminal Mischief and Criminal Trespass to Vehicles" was to be seized, including cash, burglary tools, personal information, etc. (Doc. 31-3 at USAO 0237). During the search, Deputy Moses Richardson found a Sig Sauer .40 caliber semi-automatic pistol in the closet of the master bedroom where Emter had been sleeping. Emter was arrested for violating his probation based on possession of a firearm.

On February 19, 2013, Weston filed a Report of Violation in Montana State District Court, Yellowstone County. Weston recommended that the State Court revoke Emter's suspended sentence because he violated his probation conditions. On February 21, 2013, a formal Petition to Revoke was filed in Yellowstone County and Stillwater County Chief Deputy Attorney Nancy Rohde filed charges against Emter for the vehicle break-ins and thefts that occurred on February 8. That matter was pending until August 29, 2014, when the State Court approved a Deferred Prosecution Agreement and formally dismissed the charges. Emter was indicted on federal charges five days later, on September 4, 2014.

## II. Discussion

### A. Law Enforcement Lawfully Seized the Pistol found in Emter's bedroom.

With respect to a search warrant, a neutral and detached magistrate may issue one only "upon probable cause, supported by Oath or affirmation and *particularly describing* the Place to be searched, and the person or *things* to be seized." U.S. Const. amend. IV. Therefore, as a general rule, "things" not specifically mentioned in a search warrant may not be seized.

Once the police are lawfully searching in a place for one thing, however, they may seize another that is in plain view, if its incriminating nature is immediately apparent. *United States v. Ewain*, 88 F.3d 689, 693 (9th Cir. 1996) (citing *Horton v. California*, 496 U.S. 128, 135 (1990). "The [plain view] doctrine

4

serves to supplement the prior justification – whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused – and permits the warrantless seizure." *Horton*, 496 U.S. at 136.

In *Horton*, a police officer obtained a search warrant from a magistrate judge. *Id.* at 131. The warrant permitted the officer to search the defendant's home for robbery proceeds, including certain stolen rings. *Id.* at 130–31. Although the officer's affidavit referred to weapons used during the robbery, the magistrate judge did not list weapons or firearms as items to be seized on the search warrant. *Id.* at 131.

Searching the defendant's home, the officer failed to find any stolen property. *Id.* However, during the search, the officer found several firearms. *Id.* He seized only three of the firearms, believing that the other firearms were not associated with criminal activity. *Id.* at 131 n. 1.

The trial court denied the defendant's motion to suppress the three firearms, and both the appellate court and the Supreme Court affirmed. *Id.* at 131. Applying the "plain-view" doctrine, the Court reasoned that "the items seized from [the defendant's] home were discovered during a lawful search authorized by a valid warrant." *Id.* at 142. Furthermore, "[w]hen [the three firearms] were discovered, it

was immediately apparent to the officer that they constituted incriminating evidence." *Id.*

Therefore, in order for a "thing" outside the scope of the search warrant to be constitutionally seized under the "plain-view doctrine" two requirements must be met: First, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." *Id.* at 137. Second, "not only must the item be in plain view; its incriminating character must also be immediately apparent." *Id.* These two requirements were met in this case when Stillwater County law enforcement seized the gun.

### 1. Lawful Access to the Gun.

Law enforcement was lawfully searching the closet where the gun was found, pursuant to a valid search warrant. Chief Deputy Claunch testified that he had probable cause to believe Emter was living at the residence. Sergeant Kem had spoken with Emter's probation and parole officer, Katie Weston, who confirmed that Emter was living at the residence. Claunch, Kem and Deputy Randy Smith all testified that they were aware that Emter was a convicted felon.

Additionally, the items law enforcement was searching for and seized were set forth with particularity in the search warrant. Virtually all the items listed, such as binoculars, an iPod, music CDs, a wallet, check books, IDs, and even

transmission fluid could have reasonably been discovered in the closet, in the tote, under some clothes. Deputy Richardson, the officer who discovered the firearm had a lawful right of access to the gun. He testified that he had been advised of the items stolen from the vehicles and that is what he was searching for when he discovered the gun. He was looking "only where [he] could properly look under the terms of a particularized and proper search warrant," when he found the gun. *Ewain*, 88 F.3d at 694. Accordingly, Richardson's seizure of the gun did not invade Emter's privacy. *Id.*

### 2. The Incriminating Nature of the Gun was Immediately Apparent.

The "immediately apparent" prong is also satisfied. Prior to executing the search warrant, Sergeant Kem testified that he ran Emter's criminal history and knew Emter was a felon and was on state probation. Undersheriff Klaunch and Deputy Richardson confirmed knowing this as well. All three law enforcement officers also testified that they knew since Emter was a convicted felon, he was prohibited from possessing firearms. Based on that knowledge, law enforcement had reason to believe that there was a possible violation of 18 U.S.C. § 922(g)(3), being a felon in possession of a firearm, so the incriminating nature of the gun (found in the room where Emter was sleeping) was immediately apparent.

Emter argues that the gun was not on his person, did not have his name or other marks on it to make its ownership "immediately apparent." Possession may

7

be constructive for purposes of section 924(g), however. *United States v. Shirley*, 884 F.2d 1130 (9th Cir. 1989) (defendant had another person put guns in the trunk of a car and keys in the ashtray and park the car in a place she knew about. Though she didn't put her hands on the guns, she exercised control over them.) Further, the standard for whether law enforcement had cause to believe the item seized was illegal does not require the officers to *know* that the item seized was illegal. *See United States v. Stafford,* 416 F.3d 1068, 1076 (emphasis added) (citing *United States v. Cecil,* 457 F.2d 1178, 1180 (8th Cir.1972) (noting that, in a case involving plain view seizure of a sawed-off shotgun, "[t]he observation of the gun gave probable cause for the reasonable belief that a crime, the possession of a contraband firearm, was being committed[,]" and that there is "no rule which requires an officer to have knowledge of all the elements of the crime when he views an article which reasonably appears to be contraband.")

Deputy Richardson may not have known for certain that the gun was Emter's at the time, but the fact that Emter was on probation coupled with the fact that law enforcement believed he was residing at the residence gave Deputy Richardson sufficient cause to believe that the crime of a felon in possession of a firearm was being committed. This Court finds the gun was lawfully seized.

## II. Speedy trial violation

The Speedy Trial Act requires that an "indictment charging an individual with ... an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b) (1988). It is well-established, however, that only a federal arrest triggers the statutory time limits of the Act. *See, e.g., United States v. Manuel*, 706 F.2d 908, 914-15 (9th Cir.1983) (four month delay between tribal arrest and federal indictment did not violate Speedy Trial Act).

A federal arrest requires that the defendant be detained pursuant to federal charges. *United States v. Benitez*, 34 F.3d 1489, 1493 (9th Cir. 1994). An individual who is not officially charged with a federal offense or "accused" has not been arrested for the purposes of § 3161(b). *Id.* (citing *United States v. Orbino*, 981 F.2d 1035, 1037 (9th Cir.1992). Because federal authorities actively participate in an investigation "does not mandate the application of the Speedy Trial Act." *Id.* at 1493. A Speedy Trial Act violation may exist, however, if state and federal officials collude to keep the defendant in custody while the U.S. builds a stronger case against him. *Id.* at 1494.

Emter argues that the federal and state authorities colluded to bypass the Speedy Trial Act. He argues that the Report of Violations filed by Katie Weston which stated "the defendant is being charged with two new felonies by the Federal

9

Government" is evidence that the state and federal government colluded to give "the federal government time to prepare their charges." Notwithstanding the fact that Weston clarified in the supporting evidence of her parole violation that the federal government "planned on charging" Emter, Emter's argument is meritless in light of *Benitez*.

There is no evidence the federal government was involved in investigating the Stillwater thefts. There is no evidence the federal government ever talked to the Stillwater County charging prosecutor, Nancy Rohde, prior to this month. Even if any such evidence existed and the federal government planned on charging Emter with two felonies, the Speedy Trial Act is not triggered by investigation or intended charges, only federal arrest. *Id.* at 1493.

Finally, Emter complains that he waited 63 days from the time he was indicted to be arraigned. A criminal defendant's trial must normally commence within seventy days of the filing of the indictment or the defendant's initial court appearance, whichever is later. 18 U.S.C. § 3161(c)(1). The time between the filing of the Indictment and the arraignment is not counted against the speedy trial clock. Accordingly, this Court finds that Emter's speedy trial rights have not been violated.

## III. Conclusion

For the reasons discussed above, Emter's Motion to Suppress and Dismiss (Doc. 30) is DENIED.

DATED this 23 day of January 2015.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge